# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11[2] |
| Nassau Broadcasting Partners, L.P., *et al.*,[1] | Case Nos. 11-12934 (KG) |
| Debtors and Debtors-in-Possession. | (Jointly Administered) |

**DEBTORS' MOTION, PURSUANT TO SECTIONS 105(A), 361(2) AND 363(A), (C) AND (E) OF THE BANKRUPTCY CODE AND RULES 4001(B) AND 6003 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, FOR ENTRY OF INTERIM AND FINAL ORDERS: (I) AUTHORIZING THE USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION, INCLUDING REPLACEMENT LIENS, TO PRE-PETITION LENDERS; (III) SCHEDULING A FINAL HEARING; AND (IV) GRANTING RELATED RELIEF**

Nassau Broadcasting I, LLC, Nassau Broadcasting II, LLC, Nassau Broadcasting III, LLC and Nassau Broadcasting Partners, L.P. (collectively, the "Debtors"), by and through their undersigned counsel, hereby respectfully move (the "Motion"), pursuant to sections 105(a), 361(2) and 363(a), (c) and (e) of Title 11 of the United States Code (as amended, the "Bankruptcy Code"), and Rules 4001(b) and 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of Interim and Final Orders: (i) Authorizing the Use of Cash Collateral; (ii) Granting Adequate Protection, Including Replacement Liens, to the Debtors' Prepetition Lenders; (iii) Scheduling a Final Hearing; and (iv) Granting Related Relief, and in support hereof, the Debtors respectfully state as follows:

---

[1] The Debtors are the following entities (last four digits of EIN in parentheses): (i) Nassau Broadcasting Partners, L.P., a Delaware limited partnership (9866), (ii) Nassau Broadcasting I, LLC, a Delaware limited liability company (7047), (iii) Nassau Broadcasting II, LLC, a Delaware limited liability company (2048), and (iv) Nassau Broadcasting III, LLC, a Delaware limited liability company (9570). The mailing address for the Debtors is 619 Alexander Road, Third Floor, Princeton, NJ 08540.

[2] Motions for Joint Administration and Conversion to Chapter 11 of these cases are pending.

#14954962 v6

## Background

1.  On September 15, 2011 (the "Involuntary Date"), petitioning creditors Goldman Sachs Lending Partners LLC, Fortress Credit Opportunities I LP and P.E. Capital, LLC (collectively, the "Petitioning Creditors") commenced involuntary Chapter 7 cases (the "Cases") by filing involuntary bankruptcy petitions (the "Involuntary Petitions") against each of the Debtors.

2.  On the date hereof, each of the Debtors filed an Answer to the particular Involuntary Petition filed against it. Also on the date hereof, each of the Debtors filed a Motion To Convert Cases To Cases Under Chapter 11 Of The Bankruptcy Code Pursuant To 11 U.S.C. § 706(a), pursuant to which the Debtors seek conversion of the Cases to cases under Chapter 11 of Title 11 of the United States Code, (11 U.S.C. §§ 101, *et seq.* as amended, the "Bankruptcy Code"). Provided the requests to convert are simultaneously approved, the Debtors consent to the entry of Orders for Relief under Chapter 11 of the Bankruptcy Code in each of the Cases, effective as of the date hereof (the "Relief Date").

3.  Consistent with their request for conversion of these Cases to cases under Chapter 11 of the Bankruptcy Code, on the date hereof the Debtors are filing the requisite documents attendant to the commencement of Chapter 11 proceedings, including Board of Director resolutions authorizing them to proceed in and under Chapter 11, a consolidated list of the Debtors' thirty (30) largest unsecured creditors, as well as various "first day" requests for relief customary for businesses of this size and nature, enabling them to operate in Chapter 11 as debtors and debtors-in-possession.

4.  Prior to the Involuntary Date, on or about August 31, 2005, certain of the Debtors entered into that certain Second Amended And Restated Credit And Guaranty

Agreement (together with all amendments, supplements, reaffirmations, exhibits, and attachments related thereto, the "Credit Agreement"), with multiple lenders, having as their agent Goldman Sachs Credit Partners L.P. ("GSCP" and, together with all lenders under the Credit Agreement, the "Prepetition Lenders"). As of the Relief Date, amounts due under the Credit Agreement total approximately $283,742,525, inclusive of unpaid interest, deferred interest and default interest.

5. In connection with the Credit Agreement, on or about August 31, 2005, the Debtors entered into that certain Second Amended And Restated Pledge And Security Agreement (together with all exhibits, schedules, supplements, assignments, control agreements, amendments and reaffirmations, the "Security Agreement"). Pursuant to the Security Agreement, the Prepetition Lenders have purported security interests (the "Prepetition Lenders' Liens")[3] on substantially all of the Debtors' pre-Relief Date assets, including accounts, chattel paper, documents, general intangibles, goods, instruments, insurance, intellectual property, investment property, letter of credit rights, money, receivables, and commercial tort claims, as well as products, proceeds, accessions, rents and profits of same. The Prepetition Lenders' Liens do **not** extend to the Debtors' interest in FCC licenses, arguably the most valuable asset of the estates, though the Security Agreement does according to its terms include proceeds of any sale or assignment of licenses.

6. Further information regarding the Debtors, including a description of their businesses and operations, pre-petition capital structure, indebtedness and the circumstances leading to the commencement of these bankruptcy proceedings, as well as facts that further

---

[3] Any reference herein to the Prepetition Lenders' Liens or to replacement liens proposed hereunder shall mean lien(s) held by (or proposed to be given to) Goldman Sachs Credit Partners L.P., as collateral agent for the Prepetition Lenders.

#14954962 v6

support the relief requested herein, is set forth in the Declaration of Peter Tonks, Chief Financial Officer, in Support of First Day Motions (the "Tonks Declaration"), which is incorporated by reference as if fully set forth herein.

### Jurisdiction

7. This Court possesses jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This proceeding constitutes a core proceeding pursuant to 28 U.S.C. § 157(b). Venue lies properly with this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### Relief Requested

8. Pursuant to this Motion, the Debtors respectfully request the entry of Interim and Final Orders: (i) authorizing the Debtors to use cash collateral in accordance with the budget appended hereto as Exhibit "A" (the "Budget")[4]; (ii) granting adequate protection to the Prepetition Lenders, including replacement liens on post-Relief Date assets to the extent set forth herein and in the proposed Interim Order and Final Order[5]; (iii) scheduling a final hearing to consider granting the relief requested in this Motion on a final and permanent basis; and (iv) granting related relief.

9. The statutory bases for the relief requested herein are Bankruptcy Code sections 105(a), 361(2) and 363(a), (c) and (e) and Bankruptcy Rules 4001 and 6003.

---

[4] Any reference herein to the Budget, and/or to use cash collateral in accordance therewith, shall mean the Budget, plus authority to deviate from the allotments therein by up to 10% per line item, either weekly or in the aggregate.

[5] A draft of the proposed Interim Order is appended hereto as Exhibit "B". A draft of the proposed Final order is appended hereto as Exhibit "C".

## Authority for Requested Relief

10. The Debtors have an immediate need for liquidity to operate as Chapter 11 debtors-in-possession. Without access to cash collateral and the authority to use such funds in the ordinary course of their business, the Debtors will be unable to operate, generate revenue, satisfy Chapter 11 administrative expenses, meet payroll, pay premiums to insure estate assets, and reorganize. As such, the Debtors' decision to utilize the cash collateral it has on hand to fund these cases and to continue operating is a sound exercise of their business judgment and is authorized pursuant to sections 363(c)(1) and (2) of the Bankruptcy Code. The Prepetition Lenders' Liens in the cash collateral (and other assets) sought to be utilized by the Debtors going forward is adequately protected within the meaning of section 363(c)(2) and (e) of the Bankruptcy Code.[6] As set forth in the Tonks Declaration, the Debtors have been operating on a cash flow positive basis and expect this to continue in Chapter 11. There is little risk of diminution in the value of the Prepetition Lenders' Liens, given the Debtors' proposal to limit their expenditures as set forth in the Budget. Furthermore, pursuant to this Motion, the Debtors are proposing to grant replacement liens in certain post-Relief Date estate property (including unencumbered estate assets) so as to provide additional adequate protection to the extent of any post-Relief Date diminution in the value of the Prepetition Lenders' Liens. Finally, the Debtors have an urgent need to access the cash collateral to satisfy various ordinary course expenses presently coming due including payroll payable on October 15, 2011 (which must be funded by October 12 to ensure timely payment to employees). It is therefore proper to award interim relief

---

[6] Debtors and their bankruptcy professionals have not yet completed their analysis of the validity, enforceability, perfected status, avoidability, nor extent of the Prepetition Lenders' Liens. Debtors and their estates reserve any and all rights, claims, causes of action, arguments, defenses and the like under the Bankruptcy Code and other applicable law to challenge the Prepetition Lenders' Liens and claims.

as requested herein, pursuant to section 363(c)(3) of the Bankruptcy Code and Bankruptcy Rule 6003.

I. **Access to the cash collateral is imperative to the Debtors' ability to operate and to adequately fund their Chapter 11 cases, and is therefore authorized under section 363(c) of the Bankruptcy Code.**

11. Section 363(c)(1) of the Bankruptcy Code authorizes a Chapter 11 debtor-in-possession to ". . . enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). This provision explicitly authorizes a Chapter 11 debtor to use, sell or lease property of its estate in the ordinary course of business. *In re Bryant Manor, LLC*, 422 B.R. 278, 283-84 (Bankr. D. Kan. 2010); *In re Young*, 439 B.R. 211, 219 (Bankr. M.D. Fla. 2010) (a debtor-in-possession may operate its business in the ordinary course, including by using estate property); *In re LTV Steel Co., Inc.*, 288 B.R. 775, 778 (Bankr. N.D. Ohio 2002) (if a business is a going concern, a debtor has the power to enter into post-petition transactions and to pay Chapter 11 expenses, using property of the estate). Courts will not disturb a Chapter 11 debtor's decision to engage in a post-petition, ordinary course transaction, so long as the debtor can articulate valid reasons for such decision, as opposed to a decision made arbitrarily or capriciously. *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 797 (Bankr. D. Del. 2007).

12. The Debtors use funds deposited in their bank accounts to fund day-to-day operations. As of the Relief Date, the Debtors had approximately $1.6 million on hand that might arguably constitute cash collateral. Further, the Debtors' ordinary operations will result in positive cash flow over the thirteen-week period contemplated in the Budget, as set forth more particularly in the Budget. The Debtors intend to utilize cash collateral presently in their

accounts, as well as post-Relief Date revenues, to fund operations and these Chapter 11 proceedings, in accordance with the Budget. The Debtors' use of cash collateral and post-Relief Date income will preserve and maintain the value of their estates for the benefit of the Debtors' creditors and other parties in interest.

13. Debtors' decision to access the cash collateral to continue operating in Chapter 11 and in accordance with the Budget represents the sound exercise of reasonable business judgment. The Debtors have an immediate and critical need to use the cash collateral to, among other things, maintain business relationships with vendors and customers, make payroll, pay insurance premiums, to maintain and preserve the value of estate property, pay utility providers, make capital expenditures, satisfy other operational needs and administer these cases. The Debtors' access to sufficient working capital and liquidity is vital to the preservation of the going concern value of the Debtors' business so that the Debtors can maximize the going concern value of their estates. Conversely, without the continued use of cash collateral, the Debtors and their estates will suffer immediate and irreparable harm. This is because without access to liquidity, the Debtors cannot continue operating, and will have no choice but to cease operations and therefore forfeit going-concern value. Such a result would be detrimental not only to the Debtors, but also to their estates, creditors, customers, listeners, employees and interest holders.

## II. The Prepetition Lenders are adequately protected from any diminution in the value of their Prepetition Lenders' Liens in the cash collateral.

14. Where, as here, a debtor-in-possession seeks to use estate property in which a secured creditor asserts a lien, the Bankruptcy Code requires the Court to condition the use of such property to the extent necessary to provide "adequate protection" of such lien. 11 U.S.C. §§ 363(c)(2)(B), (e). That is, a debtor may use estate property that secures the claim of a

creditor to pay Chapter 11 expenses and ordinary course expenses, so long as such creditor's security interest is adequately protected. *In re Markos Gurnee P'ship.*, 252 B.R. 712, 716 (Bankr. N.D. Ill. 1997); *see also In re Friedman's, Inc.*, 336 B.R. 880, 883 (Bankr. S.D. Ga. 2005) (in exercising § 363(c) authority, court should condition the use of estate property in such a manner as to provide adequate protection). The interest of a secured party which § 363(c) and (e) requires to be adequately protected is such creditor's interest in the collateral that the debtor's estate seeks to utilize. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988). Specifically, adequate protection is required to safeguard the creditor against (and solely to the extent of) diminution in the value of its lien. *In re Integrated Health Servs., Inc.*, 260 B.R. 71, 74 (Bankr. D. Del. 2001); *In re Continental Airlines, Inc.*, 146 B.R. 536, 539 (Bankr. D. Del. 1992) (adequate protection is intended to protect against the decrease in the value of collateral); *see also In re Farmer*, 257 B.R. 556, 560 (Bankr. D. Mont. 2000) (adequate protection is provided in order to safeguard creditor against diminishment in the value of its collateral during the reorganization process, not to compensate for lost opportunity costs).

15. The Bankruptcy Code provides examples of, but does not expressly define, "adequate protection." *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994). Adequate protection is a flexible concept that is determined and applied on a case-by-case basis. *In re Rocco*, 319 B.R. 411, 419 (Bankr. W.D. Pa. 2005). The purpose of the adequate protection requirement is to balance competing interests, which is to say to balance the debtor's need to use cash collateral and to continue operating with the creditor's right to preserve its security interest. *In re ProAlert, LLC*, 314 B.R. 436, 441 (B.A.P. 9th Cir. 2004). As such,

equitable considerations are applied in ruling on adequate protection matters. *In re Wilson*, 30 B.R. 371, 373 n.11 (Bankr. E.D. Pa. 1983).

16. Pursuant to this Motion, the Debtors are requesting authority to use cash on hand as of the Relief Date that purportedly constitutes cash collateral to which the Prepetition Lenders' Liens attach. However, the Prepetition Lenders' Liens are clearly adequately protected, within the meaning of 11 U.S.C. §§ 361, 363, in three ways. First, the Debtors have been operating on a cash-flow positive basis for six months, and over such period revenues have exceeded operational and capital expenditures by approximately $0.8 million. Second, the use of cash collateral will be in accordance with the Budget for operating and Chapter 11 expenses, and therefore such use will preserve the value of the Debtors' estates as a "going concern." Such value preservation will redound to the benefit of the Prepetition Lenders because the Debtors' business (including those components thereof constituting the Lenders' collateral) is operating on a positive cash flow basis and has greater value as a going concern than would be the case if the business was shut down and liquidated. Finally, the Debtors propose to grant replacement liens to the Prepetition Lenders post-Relief Date accounts receivable and cash, solely to the extent of any actual diminution in the post-Relief Date value of the Prepetition Lenders' Liens resulting from the Debtors post-Relief Date use of cash collateral.

> **A.** **The Prepetition Lenders' Liens are adequately protected because the Debtors are operating on a cash-flow positive basis.**

17. As set forth in the Budget, the Debtors expect to have positive cash flow, taken as a whole, for the thirteen-week Budget period subsequent to the Relief Date[7]. This

---

[7] While certain, specific expenditures may result in negative cash flow for particular weeks under the Budget, Debtors anticipate positive cash flow both monthly and over the period set forth in the Budget taken as a whole.

expectation is consistent with the Debtors' actual operating performance over the past six months, during which Debtors have been operating on a cash flow positive basis. Specifically, over the last six months, the Debtors have generated revenue in the approximate amount of $19.2 million, exceeding disbursements and capital expenditures of $18.4 million. Even accounting for professional and statutory fees attendant to their Chapter 11 proceedings (which are factored into the Budget), the Debtors reasonably expect this pattern to continue. As such, the Prepetition Lenders' Liens in cash collateral are adequately protected. That is, there will be no diminution in value because the Debtors expect, during the Budget period, to generate revenue in excess of any expenditures of cash collateral.

18. As noted above, adequate protection is required <u>only</u> to the extent of diminution in a secured party's interest in collateral. *United Savings Ass'n. of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370-71 (1988); *see also In re Fontainebleau Las Vegas Holdings, LLC*, 434 B.R. 716, 750 (S.D. Fla. 2010) (adequate protection is required only for the value of lienor's interest, meaning the value of the collateral). Where, as here, the secured creditor is suffering no diminution in collateral value as a result of a debtor's use thereof in Chapter 11, the creditor is not entitled to adequate protection. *In re Club Assocs.*, 107 B.R. 385, 394 (Bankr. N.D. Ga. 1989). Said another way, if the collateral is not diminishing in value as a result of the debtor's use, the creditor's interest in such collateral is sufficiently protected without the need for additional adequate protection. *In re McCombs Props. VI, Ltd.*, 88 B.R. 261, 266 (Bankr. C.D. Cal. 1988) (secured creditor's interest in cash and proceeds derived from debtor's operations was adequately protected where the value of the collateral was not declining during the pendency of the bankruptcy case); *In re Forest Ridge II, Ltd. P'ship.*, 116 B.R. 937, 950 (Bankr. W.D.N.C. 1990) (because collateral was not decreasing in value, no adequate

protection payments were required, and the debtor was permitted to use cash collateral for payment of operating expenses). The Debtors' post-Relief Date operations will generate sufficient revenue to avoid any diminishment in the Prepetition Lenders' Liens in and against the cash collateral, rendering unnecessary the provision of additional adequate protection beyond a replacement lien on post-Relief Date cash and accounts receivable.

        B.      **The Debtors' use of cash collateral enhances the value of the Prepetition Lenders' Liens because such use will preserve the value of the Debtors' business as a going concern.**

        19.      The continued operation of the Debtors' business will preserve the Debtors' going-concern value, enable them to capitalize on that value through the Chapter 11 process, and ultimately, facilitate the Debtors' restructuring. Conversely, absent the use of cash collateral, the Debtors' revenues will cease and their business will deteriorate (and shut down), to the detriment of their creditors, employees and other parties in interest. Authorizing the use of cash collateral therefore will actually enhance, as opposed to impair, the value of the Prepetition Lenders' Liens, because such liens purport to extend to assets that have greater value as a "going concern" than would be the case if operations are discontinued and the assets liquidated.

        20.      Accordingly, maintenance of the Debtors' business as a going concern is imperative to preserving value, is a chief objective of the Chapter 11 process, and also serves as additional adequate protection for the Prepetition Lenders' Liens. *See, e.g., In re Northwest Airlines Co.*, 349 B.R. 338, 380 (S.D.N.Y. 2006) ("[t]he Bankruptcy Code embodies a strong policy in favor of reorganization"); *In re Stein*, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (authorizing debtor's use of cash collateral to continue operations and holding that the creditor's "secured position can only be enhanced by the continued operation of the [business]"); *In re Constable Plaza Assocs. L.P.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (holding that

#14954962 v6

reinvestment of encumbered rents to maintain building "will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the] mortgage"); *Fed. Nat'l Mortgage Ass'n v. Dacon Bolingbrook Assocs. Ltd. P'ship*, 153 B.R. 204, 214 (N.D. Ill. 1993) (security interest was protected because use of cash collateral was toward operation and maintenance of the property).

21. Without access to the cash collateral, the Debtors will not be able to pay licensing fees, meet payroll, pay utility providers, insure their property against casualty and loss, acquire needed goods and services, or otherwise operate, even in the short term. The Debtors would have no choice but to terminate operations, making a reorganization impossible. Under this scenario, all interested parties, including the Prepetition Lenders, would suffer a lower return on their claims and interests as a result of the diminished value the Debtors' assets would have in a liquidation or foreclosure scenario. Because use of the cash collateral will preserve the Debtors' going concern value, such use, by itself, provides adequate protection to the Prepetition Lenders' liens.

    **C.**    **Replacement Liens in unencumbered collateral will adequately protect any diminishment in the value of the Prepetition Lenders' Liens.**

22. Pursuant to this Motion, the Debtors propose to provide the Prepetition Lenders with replacement liens in cash and accounts receivable generated after the Relief Date to the extent of any diminution in the value of their pre-Relief Date liens that results from the Debtors' post-Relief Date use of cash collateral in these cases, subject to budgeted expenses and the provisions of the Interim Order and/or the Final Order granting this Motion. The Debtors' post-Relief Date accounts receivable and the proceeds thereof are not encumbered. The

proposed replacement liens therefore provide sufficient adequate protection for the use of cash collateral.

        (i)    <u>The Debtors' post-Relief Date accounts receivable and the proceeds therefrom, including cash, are free of security interests as a matter of law.</u>

23. Notwithstanding the "after-acquired property" and "proceeds" provisions in the Prepetition Lenders' Security Agreement and/or financing statements, the Prepetition Lenders' Liens do extend to post-Relief Date accounts receivable or their proceeds under the Bankruptcy Code. Section 552(a) of the Bankruptcy Code provides that ". . . property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." 11 U.S.C. § 552(a). The Credit Agreement, Security Agreements and financing statements involving the Prepetition Lenders all were entered into and/or recorded prior to the Relief Date and the Involuntary Date. Thus, all receivables generated post-Relief Date and any proceeds therefrom are free of any liens and/or other encumbrances. *In re Skagit Pac. Corp.*, 316 B.R. 330, 335 (B.A.P. 9th Cir. 2004) (holding that § 552(a) cuts off security interests on property acquired by debtor after commencement even if there is an "after acquired" property clause in the security agreement); *In re Fischer*, 184 B.R. 293, 300 (Bankr. M.D. Tenn. 1995) (secured creditors' interest is limited to its interest in debtor's property on the date of filing); *In re Pigeon*, 49 B.R. 657, 659 (Bankr. D. N.D. 1985) (holding that under § 552, lien under pre-petition security agreement does not extend to like property which is acquired through debtor's post-petition operations); *In re Kizis*, 238 B.R. 89, 93 (Bankr. M.D. Pa. 1999) (as a general rule, pre-petition security interests do not reach property acquired by the estate or debtor post-petition).

-13-

#14954962 v6

24. Section 552(b) contains a limited exception to subsection (a)'s general prohibition on the attachment of pre-petition liens to post-petition property, and provides that, to the extent a creditor's pre-petition collateral includes "proceeds, products, offspring or profits" of other collateral, then its lien will extend to the proceeds, products, offspring or profits of its pre-petition collateral acquired by the estate post-petition. 11 U.S.C. § 552(b)(1). However, in order for such exception to apply, the collateral from which the proceeds are derived must be owned or held by the debtor prior to the commencement date. *In re Northeast Chick Services, Inc.*, 43 B.R. 326, 331 (Bankr. D. Mass. 1984) (proceeds from collateral are excepted only to the extent the collateral was in existence prior to the filing).

25. The Prepetition Lenders' collateral does include 'proceeds, products, accessions, rents and profits' of the other collateral items. Notwithstanding such language, the Prepetition Lenders' Liens *do not* attach to accounts receivable that are generated by the Debtors after the Relief Date, nor to the proceeds, including cash proceeds, of such post-Relief Date accounts. This is because such accounts (and their proceeds) are not the proceeds of any accounts or other collateral owned or held by the Debtors prior to the Relief Date. Indeed, post-petition receivables were not even in existence prior to the Relief Date because the Debtors had not yet earned them. *In re Lykes Bros. S.S. Co.*, 216 B.R. 856, 863 (Bankr. M.D. Fla. 1996) (pre-petition liens in charter hire payments did not survive bankruptcy because debtor had no right to collect payments until they came due and were not 'proceeds'); *Johnson v. Cottonport Bank*, 259 B.R. 125, 128-29 (W.D. La. 2000) (where debtor grants a security interest in the right to receive future payments, such lien continues post-bankruptcy only if the right to receive the payments existed pre-petition and the debtor needs not do anything post-petition to make them continue); *In re Skagit Pac. Corp.*, 316 B.R. at 336 (proceeds of post-petition receivables do not fall within

-14-

#14954962 v6

the "proceeds" exception to § 552(a); because § 552(b) exception encompasses only cash collected upon existing pre-petition receivables); *In re Texas Tri-Collar, Inc.*, 29 B.R. 724, 727 (Bankr. W.D. La. 1983) (pre-petition assignment of accounts receivable does not encompass receivables generated post-petition, since receivables generated post-petition are in no way proceeds of pre-petition receivables); *James Cable Partners, L.P. v. Citibank, N.A.*, 141 B.R. 772, 777 (Bankr. M.D. Ga. 1992) (payments from post-petition subscribers were not subject to pre-petition lien because they were acquired through post-petition efforts).

26. Post-Relief Date accounts receivable, as meant in this Motion, will be acquired by Debtors as a result of operations conducted after the Relief Date (i.e., when the Debtors perform the services that "earn" the receivables or contract to do same. Post-Relief Date receivables therefore do not constitute "proceeds" of pre-Relief Date collateral, and they are free of liens pursuant to Sections 552(a) & (b) of the Bankruptcy Code.

    (ii) <u>The proposed replacement liens adequately protect the Prepetition Lenders' Liens in cash collateral to the extent of any diminishment resulting from Debtors' use of cash collateral.</u>

27. As additional protection for the Prepetition Lenders' Liens, the Debtors propose to grant the Prepetition Lenders replacement liens in cash and accounts receivable generated after the Relief Date, solely to the extent of any post-Relief Date diminution in the value of such pre-Relief Date liens resulting from the post-Relief date use of cash collateral. Section 361 of the Bankruptcy Code expressly contemplates this method of adequate protection: "[w]hen adequate protection is required . . . such adequate protection may be provided by . . . an additional or replacement lien to the extent that such . . . use [of encumbered property] . . . results in a decrease in the value of such entity's interest in such property . . .". 11 U.S.C. § 361(2).

28. As set forth in the Budget and the estimates of post-Relief Date revenues, the proposed replacement liens will provide more than sufficient adequate protection for any diminution in lien values resulting from the use of cash collateral. Such liens would extend, to the extent necessary and subject to any diminution of value, to presently unencumbered receivables and their cash proceeds. Furthermore, no party-in-interest will be prejudiced as a result of the replacement liens because they will not prime other liens, and because the Budget demonstrates that the Debtors will be able to satisfy Chapter 11 administrative and operating expenses through post-Relief Date revenues. In this situation, it is clear that the replacement liens are warranted and constitute sufficient adequate protection. *In re Las Vegas Monorail*, 429 B.R. 317, 340 (replacement liens in post-petition deposits were sufficient cash collateral).

**Request for Interim Relief**

4. Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a motion to use, sell, lease or otherwise incur an obligation regarding property of the estate within twenty-one (21) days after the filing of the petition if the relief sought is necessary to avoid immediate and irreparable harm. As set forth above, the value of the Debtors and/or their estates could suffer immediate and irreparable harm absent the relief requested in this Motion. This Motion is therefore exempt from the prohibition set forth in Bankruptcy Rule 6003. The Debtors respectfully request the entry of an order, in substantially the form affixed hereto, granting the relief sought in this Motion in connection with the "first day" hearings in these cases.

The Debtors further seek relief from the fourteen (14) day stay of an order granting this Motion pursuant to Bankruptcy Rule 6004(h), to the extent such Bankruptcy Rule is applicable, and requests that such order be effective immediately upon entry thereof.

#14954962 v6

WHEREFORE, the Debtors respectfully request that the Court: (i) grant the relief requested in this Motion; (ii) authorize the Debtors to make full use of any and all monies that constitute cash collateral securing any obligation, subject to the terms of the Interim Order and/or Final Order; (iii) authorize the Debtors to grant replacement liens in post-Relief Date property to the extent described in the Interim Order and/or Final Order; (iv) schedule a Final Hearing to consider granting the relief requested in this Motion on a final basis; and (v) grant such other and further relief in favor of the Debtors as the Court deems just and proper.

Dated: October 6, 2011
       Wilmington, Delaware

Respectfully submitted,

PEPPER HAMILTON LLP

/s/ James C. Carignan
David M. Fournier (DE No. 960)
James C. Carignan (DE No. 4230)
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
Telephone: 302.777.6500
Facsimile: 302.421.8390
fournierd@pepperlaw.com
carignaj@pepperlaw.com

-AND-

Leon R. Barson, Esq.
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: 215.981.4424
Facsimile: 215.981.4750
barsonl@pepperlaw.com

*Proposed Counsel for the Debtors and Debtors in Possession*