# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> Nassau Broadcasting Partners, L.P., *et al.*,[1] <br><br> Debtors and Debtors-in-Possession. | Chapter 11 <br><br> Case No. 11-12934 (KG) <br><br> (Jointly Administered) <br><br> **Related Docket No. 26** |

## INTERIM ORDER (A) AUTHORIZING USE OF CASH COLLATERAL, (B) GRANTING ADEQUATE PROTECTION, AND (C) SCHEDULING A FINAL HEARING

Upon the motion (the "**Motion**"), dated October 6, 2011, of Nassau Broadcasting I, LLC, Nassau Broadcasting II, LLC, Nassau Broadcasting III, LLC, and Nassau Broadcasting Partners, L.P., as debtors and debtors in possession (the "**Debtors**") in the above-captioned cases (the "**Cases**"), pursuant to sections 105, 361, and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 4001 and 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), seeking entry of an interim order (the "**Interim Order**"):

(a) authorizing the Debtors' use of "cash collateral" (the "**Cash Collateral**"), as such term is defined in section 363(a) of the Bankruptcy Code, of the Lenders (as defined herein);

(b) granting adequate protection for the use of the Lenders' Cash Collateral; and

(c) scheduling a final hearing (the "**Final Hearing**") to consider the relief requested in the Motion and the entry of a Final Order (as defined herein), and approving the form of notice with respect to the Final Hearing,

---

[1] The Debtors are the following entities (last four digits of EIN in parentheses): (i) Nassau Broadcasting Partners, L.P., a Delaware limited partnership (9866), (ii) Nassau Broadcasting I, LLC, a Delaware limited liability company (7047), (iii) Nassau Broadcasting II, LLC, a Delaware limited liability company (2048), and (iv) Nassau Broadcasting III, LLC, a Delaware limited liability company (9570). The mailing address for the Debtors is 619 Alexander Road, Third Floor, Princeton, NJ 08540.

all as more fully described in the Motion; and an interim hearing with respect to the Motion having been held on October 12, 2011 (the "**Interim Hearing**"); and notice of the Interim Hearing having been adequate and appropriate under the circumstances and it appearing that no other or further notice need be provided; and the relief requested being within the guidelines for requests for the use of cash collateral set forth in Local Rule 4001-2; and the relief requested in the Motion being in the best interest of the Debtors, their estates, and creditors; and the Court having reviewed the Motion, and the evidence submitted or adduced and the arguments of counsel made at the Interim Hearing; and the appearances of all interested parties having been noted in the record of the Interim Hearing; and the Court having determined that the legal and factual bases set forth in the Motion and at the Interim Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.  Commencement Date. On September 15, 2011, Goldman Sachs Lending Partners LLC, Fortress Credit Opportunities I LP, and P.E. Capital, LLC (collectively, the "**Petitioning Creditors**"), lenders under the Credit Agreement (as defined below), filed involuntary chapter 7 petitions (the "**Involuntary Petitions**") against the Debtors. On October 6, 2011, each of the Debtors filed an Answer to the applicable Involuntary Petition filed against it. Also on October 6, 2011, each of the Debtors filed a Motion To Convert Cases To Cases Under Chapter 11 Of The Bankruptcy Code Pursuant to 11 U.S.C. § 706(a), pursuant to which the Debtors sought conversion of the Cases to cases under chapter 11 of the Bankruptcy Code. The Debtors have requested the entry of Orders for Relief (the "**Chapter 11 Orders**") under chapter 11 of the Bankruptcy Code in

each of the Cases, effective as of October 12, 2011 (the "**Relief Date**"). On the Relief Date, the Court entered the Chapter 11 Orders converting the chapter 7 Cases to chapter 11 Cases.

B. <u>Debtor in Possession</u>. The Debtors continue to operate their business and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Cases.

C. <u>Jurisdiction and Venue</u>. This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings and over the persons and property affected hereby. Venue for the Cases is proper in this district pursuant to 28 U.S.C. § 1408. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

D. <u>Statutory Committee</u>. To date, no official committee of unsecured creditors has been appointed in the Cases.

E. <u>Debtors' Acknowledgements</u>. The Debtors acknowledge that, as of the Relief Date, the Debtors were indebted to the Lenders for loans, advances, and other financial accommodations made by the Lenders pursuant to the Prepetition Loan Documents (as defined below) in the aggregate amount of $283,742,525.

F. <u>Lenders' Assertions</u>. Without prejudice to the rights of the Debtors and other parties in interest, the Lenders assert that (collectively, paragraphs i through vi below are referred to herein as the "**Lenders' Assertions**"):

(i) On or about August 31, 2005, the Debtors, the administrative agent, the collateral agent, and certain lenders entered into the Second Amended and Restated Credit and Guaranty Agreement, dated as of August 31, 2005 but effective as of June 30, 2005 (as amended, supplemented or otherwise modified, the "**Credit Agreement**"). Pursuant to the Credit Agreement and certain related documents executed in connection with the Credit Agreement, including,

without limitation, control agreements, guaranties, mortgages, Uniform Commercial Code financing statements, and all other related agreements, documents, and instruments (as the same may have been amended, restated, modified, or supplemented from time to time, together with the Credit Agreement, the "**Prepetition Loan Documents**"), the lenders thereunder (including the Petitioning Creditors, the "**Lenders**") (or their predecessors in interest) made certain loans, advances, and other financial accommodations to the Borrower thereunder, Nassau Broadcasting I, LLC. The obligations under the Credit Agreement are unconditionally jointly and severally guaranteed by the other Debtors, each of which is an affiliate of the Borrower.

(ii) For purposes of this Interim Order, the term "**Prepetition Indebtedness**" shall mean, without duplication, any and all amounts owing or outstanding under the Prepetition Loan Documents, including, without limitation, all Obligations (as defined in the Credit Agreement), interest, fees, and other costs, expenses, and charges owing in respect of such amounts, including, without limitation, any attorney or other professional fees and expenses, and other fees and expenses that are chargeable or reimbursable pursuant to the Prepetition Loan Documents, and any and all obligations and liabilities, contingent or otherwise, owed in respect of the Prepetition Loan Documents.

(iii) To secure the Prepetition Indebtedness, pursuant to the Prepetition Loan Documents, including, without limitation, the Second Amended and Restated Pledge and Security Agreement, dated as of August 31, 2005, by and between the Debtors, the other Grantors (as defined therein) from time to time party thereto and Goldman Sachs Credit Partners L.P., as collateral agent for the Lenders (as defined therein) (the "**Agent**" or "**Collateral Agent**") (as amended, restated, modified, or supplemented from time to time, the "**Security Agreement**"), control agreements, guaranties, mortgages, Uniform Commercial Code financing statements, and all

other related agreements, documents, and instruments, by which the Debtors, as applicable, granted to the Agent for the benefit of the Lenders valid, enforceable, and perfected security interests in, and continuing first priority liens on (collectively, the "**Prepetition Liens**"), substantially all of the assets of each of the Debtors, including, but not limited to, real property, equipment, cash or cash equivalents, general intangibles, patents, copyrights, trademarks, and other intellectual property, and certain pledged equity interests (collectively, the "**Collateral**"). For the avoidance of doubt, the term "Collateral" shall include collateral in or upon which a Prepetition Lien or other security interest has been granted in favor of or for the benefit of the Collateral Agent or for the benefit of the Lenders in connection with, pursuant to, or under the Credit Agreement and the Prepetition Loan Documents, including all proceeds, products, offspring, rents, and profits. The Collateral granted to or on behalf of the Lenders includes, without limitation, all General Intangibles (as such term is defined in the Security Agreement). Under the Security Agreement, General Intangibles includes, without limitation, "all FCC Authorizations (but only to the extent that any Grantor is now or hereafter permitted by applicable law to grant a security interest in such FCC Authorizations), and all rights incident or appurtenant to such FCC Authorizations (but only to the extent that any Grantor is now or hereafter permitted by law to grant a security interest in such rights), including, without limitation, the right to receive all Receivables derived from or arising in connection with the sale, assignment or transfer of any FCC Authorizations." The term "FCC Authorization" means "the licenses, construction permits, or other authorizations issued by the FCC, or any successor agency and necessary for the ownership and operation of the Stations." The Collateral granted to the Lenders under the Security Agreement also includes, without limitation, "Proceeds derived from or arising in connection with the sale or assignment of any FCC Authorization."

(iv) The Prepetition Loan Documents are legal, valid, and binding agreements and obligations of the Debtors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code).

(v) The Prepetition Liens are (a) valid, binding, enforceable (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code), and perfected first priority security interests and liens, subject only to the Permitted Liens (as defined in the Credit Agreement), but only to the extent such Permitted Liens existed as of the Relief Date and are valid, enforceable, non-avoidable liens and security interests that are perfected prior to the Relief Date (or perfected after the Relief Date to the extent permitted by section 546(b) of the Bankruptcy Code) (the "**Valid Permitted Liens**") and (b) not subject to avoidance, reduction, disallowance, impairment, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law.

(vi) (a) The Prepetition Indebtedness constitutes a legal, valid, and binding obligation of each of the Debtors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code), (b) no objection, offset, defense, or counterclaim of any kind or nature to the Prepetition Indebtedness or the Prepetition Liens exists, and none of the Debtors or any Grantor, either collectively or individually, has any claim, counterclaim, setoff, or defense of any kind, nature or description that would in any way affect the validity, enforceability, and non-avoidability of any of the Prepetition Indebtedness, the Prepetition Liens or any of the Collateral, and (c) the Prepetition Indebtedness and any amounts previously paid to the Agent or any Lender on account of, or with respect to, the Prepetition Indebtedness are not subject to avoidance, reduction, disallowance, impairment,

recharacterization, or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law.

G. <u>Purpose and Necessity of Cash Collateral; Exigency</u>. Good cause has been shown for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2). The Debtors have an immediate and critical need to use Cash Collateral in order to, among other things, fund the ordinary costs of the Debtors' operations, maintain business relationships with vendors, advertisers, and customers, make payroll, and satisfy other working capital and operational needs. The Debtors' access to sufficient working capital and liquidity through the use of Cash Collateral under the terms of this Interim Order is vital to the preservation and maintenance of the value of the Debtors' estates. Entry of this Order is in the best interest of the Debtors, their estates, and creditors. The terms of the Debtors' interim use of Cash Collateral are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. Consequently, without the continued use of Cash Collateral, to the extent authorized pursuant to this Interim Order, the Debtors and their estates would suffer immediate and irreparable harm.

H. <u>Consensual Use of Cash Collateral</u>. To the extent the Agent and Lenders have consented to the use of Cash Collateral as set forth in this Interim Order, such consent shall not extend to any other or further use of Cash Collateral. Consistent therewith, nothing contained in this Interim Order shall in any way prejudice or preclude the Lenders and/or the Agent from objecting to or otherwise opposing the use of Cash Collateral beyond that provided in this Interim Order or from exercising any other rights or remedies under applicable law, and the Debtors reserve all rights and defenses in respect thereof. Nothing in this Interim Order shall preclude the Debtors from seeking the further use of Cash Collateral after the Specified Period (as defined below).

I. **Adequate Protection**. The Adequate Protection (as defined and as provided herein) is (i) reasonable and sufficient to protect the interests of the Agent and the Lenders with respect to the use of Cash Collateral as provided in this Interim Order, (ii) consistent with and authorized by the Bankruptcy Code, and (iii) necessary to obtain the consent of the Agent and the Lenders.

J. The Debtors have prepared a 13-week budget, which is attached to this Interim Order as "**Exhibit 1**" (the "**Approved Budget**"). The Approved Budget has been reviewed by the Debtors and the Debtors believe that the Approved Budget is reasonably achievable and should allow the Debtors to operate through the date that is thirty (30) days from entry of this Interim Order without the accrual of material unpaid and undisputed past due administrative expenses. The Agent and the Lenders are relying upon the Debtors' representations above regarding the Debtors' ability to comply with the Approved Budget in determining to consent to the Debtors' use of the Cash Collateral as provided herein.

K. **Good Faith Bargaining**. The Debtors and the Agent have negotiated the terms and conditions of the Debtors' continued use of Cash Collateral and this Interim Order in good faith and at arm's length.

L. **Final Hearing**. At the Final Hearing, the Debtors intend to seek final approval of the relief requested in the Motion or any amended Motion for the proposed use of Cash Collateral pursuant to a final order (the "**Final Order**").

M. **Notice**. Notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to the parties listed on Docket Nos. 47 and 52. The Debtors have made reasonable efforts to afford appropriate notice under the circumstances and such notice is good and sufficient to permit

the interim relief set forth in this Interim Order, and no other or further notice is or shall be required.

Based upon the foregoing findings and conclusions, the Motion and the record before this Court with respect to the Motion, and good and sufficient cause appearing therefor, NOW, THEREFORE, IT IS HEREBY ORDERED that:

1. <u>Disposition</u>. The Motion is approved on the terms and conditions set forth in this Interim Order. All objections to the entry of this Interim Order, to the extent not withdrawn or resolved, are hereby overruled, except to the extent that such objections may pertain to the Final Order.

2. <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions set forth in this Interim Order, the Debtors are authorized, pursuant to section 363(c)(2)(B) of the Bankruptcy Code, to use Cash Collateral solely during the period from entry of the Interim Order through and including the earlier of (the "**Specified Period**") (a) November 10, 2011 (unless a Final Order is entered prior to that date authorizing the Debtors' use of Cash Collateral beyond such date); and (b) the occurrence of a Termination Event (as defined below); provided, further, for the avoidance of doubt, notwithstanding anything herein to the contrary, the consent of the Agent and the Lenders with respect to the Debtors' use of Cash Collateral pursuant to this Interim Order extends no later than the earlier to occur of November 10, 2011 or a Termination Event, and the Debtors, the Agent and the Lenders reserve all rights remedies and defenses with respect to any proposed use of Cash Collateral beyond such period. The Debtors shall use the Cash Collateral solely in accordance with this Interim Order and the Approved Budget. The Agent and the Lenders have consented to the Debtors' use of the Cash Collateral, subject to the terms of this Interim Order, and the Approved Budget.

3. **Adequate Protection.** As adequate protection against and solely to the extent of any diminution in value of the interests of the Lenders in the Collateral, including, without limitation, any such diminution resulting from the Debtors' use of Cash Collateral, or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "**Adequate Protection Obligations**"), the Agent on behalf of the Lenders is hereby granted the following adequate protection (collectively, the "**Adequate Protection**"):

    a. **Adequate Protection Liens.** Effective and perfected as of the date of this Interim Order and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or other agreements, a valid and perfected first priority, security interest in, and lien upon (the "**Adequate Protection Liens**"), all of the Debtors' right, title, and interest in, to, and under all present and after acquired property and assets of any nature whatsoever whether real or personal, tangible or intangible, wherever located including, without limitation, the proceeds of any avoidance actions under chapter 5 of the Bankruptcy Code (the "**Adequate Protection Collateral**"); provided that liens on FCC Authorizations are only granted herein to the extent that any Debtor is now or hereafter permitted by law to grant a security interest in such FCC Authorizations; provided further, however, that, with respect to the proceeds of any avoidance actions under chapter 5 of the Bankruptcy Code, the attachment of the Adequate Protection Liens thereto is subject to approval in a Final Order; and further provided, however, that the Adequate Protection Liens shall be subject only to (i) the Valid Permitted Liens; (ii) all statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6); and (iii) all fees payable to the Clerk of the Court. The Adequate Protection Liens shall be perfected liens. The Adequate Protection Liens shall be enforceable against the Debtors, their estates, and any successors thereto, including without limitation any trustee or other estate

representative appointed in the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**"). Except as provided herein, the Adequate Protection Liens shall not be made subordinate to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in these Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in these Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases. The Adequate Protection Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Adequate Protection Liens.

        b.      <u>Adequate Protection Superpriority Claims</u>. The Adequate Protection Obligations shall constitute allowed superpriority administrative expense claims against the Debtors (the "**Adequate Protection Superpriority Claims**"). The Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and all other claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113, and 1114 of the Bankruptcy Code, but shall be subject to (i) all statutory fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6), and (ii) all fees payable to the Clerk of the Court.

        c.      <u>Approved Budget Compliance</u>. The Debtors shall be authorized to use Cash Collateral only in accordance with the Approved Budget, subject to the Debtors' authority to deviate from the allotments therein by up to 10% per line item, either weekly or in the aggregate; provided, however that all such deviations shall not exceed 15% of the aggregate

amount provided in the Approved Budget for all expenditures for the period this Interim Order is in effect.

    d. <u>Reporting</u>. The Debtors shall deliver to the Agent, in each case, in form and substance reasonably acceptable to the Agent, (i) on a weekly basis, by Wednesday of each week following entry of the Interim Order, an updated 13-week cash flow forecast for the succeeding 13 calendar weeks and (ii) on a weekly basis, by Wednesday after the end of each calendar week following entry of the Interim Order, weekly and cumulative variance reporting on a line item basis, which (A) details the variance, if any, of actual cash disbursements and actual cash receipts from the Approved Budget, (B) provides an explanation as to any per line item variance, and (C) certifies to the best of knowledge as to the accuracy of the reporting (collectively, the "**Reporting**").

    4. <u>Sufficiency of Adequate Protection</u>. Notwithstanding any other provision of this Interim Order, the grant of Adequate Protection to the Agent and the Lenders pursuant to this Interim Order is without prejudice to the right of the Agent and the Lenders to seek modification of the Adequate Protection following the Specified Period so as to provide different or additional adequate protection, and is without prejudice to the right of the Debtors or any other party in interest to contest any such modification.

    5. <u>Perfection of Adequate Protection Liens</u>. This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens, without the necessity of filing or recording any mortgage, financing statement, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit control agreement) to validate or perfect (in accordance with applicable non-bankruptcy

law) the Adequate Protection Liens, or to entitle the Agent for the benefit of the Lenders to the priorities and benefits granted herein. The Debtors are authorized and directed to execute and deliver promptly to the Lenders and the Agent all such financing statements, fixture filings, mortgages, notices, and other documents as may reasonably be requested consistent herewith. The Agent or its authorized agent may (but shall not be required to) file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statement, notices of lien or similar instrument.

6. <u>Limitation on Charging Expenses Against Collateral</u>. Subject to approval in the Final Order and the Debtors' right to object thereto, no costs or expenses of administration which have been or may be incurred at any time in these Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from any of the Agent, the Lenders or any of their respective claims or the Adequate Protection Collateral, the Collateral or the Cash Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise.

7. <u>Cash Management</u>. The Debtors shall maintain the cash management system set forth in the Order approving the Cash Management Motion (as may be amended or supplemented from time to time) during the period that this Interim Order is in effect, subject to the written consent of the Agent.

8. <u>Binding Effect of Interim Order</u>.

   a. Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Agent, the Lenders, the Debtors, all other

US_ACTIVE:\43809457\06\71620.0069
#15026723 v1

creditors of any of the Debtors, any trustee or fiduciary appointed in these Cases or any Successor Cases, and all other parties in interest and their respective successors and assigns (including, without limitation, upon dismissal of any of the Cases or Successor Cases).

b.  The provisions of this Interim Order and any actions taken pursuant hereto (i) shall survive the entry of any order dismissing the Cases; and (ii) shall continue in full force and effect notwithstanding the entry of any such order, and the claims, liens, and security interests granted pursuant to this Interim Order shall continue and maintain their priority as provided by this Interim Order until all of the Adequate Protection Obligations are indefeasibly paid in full and discharged.

9.  Rights and Remedies Upon Termination Event.

a.  With respect to the Debtors' authorization to use Cash Collateral under this Interim Order, each of the following shall constitute a "**Termination Event**": (i) the dismissal of any of the Cases or the conversion of any of the Cases to cases under chapter 7 of the Bankruptcy Code; (ii) the entry of an order reversing, staying, vacating, or otherwise modifying in any material respect the terms or provisions of this Interim Order; (iii) the Debtors shall create, incur or suffer to exist any other claim which is *pari passu* with or senior to the Adequate Protection Superpriority Claims of the Lenders; (iv) the failure to satisfy Adequate Protection Payment obligations due to the Lenders as provided herein; (v) the failure by the Debtors to perform, in any material respect, any of the obligations under this Interim Order, including, without limitation, the failure to comply with paragraphs 3(c) and 3(d) hereof; and (vi) the authorization to use Cash Collateral as provided in this Interim Order is otherwise terminated, comes to an end or is no longer authorized.

b. Upon the occurrence of a Termination Event: (i) the Debtors' use of Cash Collateral shall immediately terminate; and (ii) subject to giving three (3) days' notice to the attorneys for the Debtors and any Creditors' Committee, and the Office of the United States Trustee, the Agent and the Lenders shall have the right to have a hearing before the Court with respect to any other remedies, subject to the rights of the Debtors or any other party in interest to object. The rights and remedies of the Agent and Lenders specified herein are cumulative and not exclusive of any rights or remedies that the Agent and Lenders may have under the Prepetition Loan Documents or otherwise.

10. <u>Limitations on Cash Collateral</u>. Without limiting any retained professional's right to seek, the Agent's right to oppose, or the Court's ability to order, payment of any fees or expenses of any retained professional following the Specified Period, no portion of the Cash Collateral, and no disbursements set forth in the Approved Budget, shall be used (a) for the payment of professional fees, disbursements, costs, or expenses incurred in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion, or other litigation of any type (or the preparation of any such action, suit, arbitration, proceeding, application, motion or other litigation) (i) against the Lenders or the Agent or seeking relief that would impair their rights and remedies under the Prepetition Loan Documents or this Interim Order, including, without limitation (x) to assert, commence, or prosecute any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against any of the Lenders or the Agent; (y) to prepare or prosecute an objection to, contest in any manner, or raise any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the rights and obligations of the Lenders or the Agent or seeking affirmative relief against them; or (z) for the payment of any services rendered by the Professionals retained by the Debtors or any

official committee of unsecured creditors in connection with the assertion of or joinder in any claim, counterclaim, action, proceedings, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief that would impair the ability of the Lenders or the Agent to recover on the Obligations; (ii) invalidating, setting aside, avoiding, or subordinating, in whole or in part the Obligations; (iii) for monetary, injunctive, or other affirmative relief against any of the Lenders or their collateral that would impair the ability of the Lenders to recover on the Obligations; or (iv) preventing, hindering, or otherwise delaying the exercise by the Lenders or any of their respective rights and/or remedies under this Interim Order, the Prepetition Loan Documents, or applicable law; or (b) to object to or challenge in any way the claims, liens, or interests held by Lenders or the Agent. Notwithstanding the foregoing, the Cash Collateral may be used by any official committee of unsecured creditors, should one be appointed, to investigate prepetition liens and claims of the Lenders provided that no more than $20,000 in the aggregate of Cash Collateral may be spent on such investigations, subject to adjustment in a Final Order.

11.   Preservation of Rights.

a.   If an order dismissing or converting any of the Cases is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (y) the Adequate Protection Liens and the Adequate Protection Claims shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all Adequate Protection Obligations shall have been indefeasibly paid and satisfied in full, and that such Adequate Protection Liens and Adequate Protection Claims shall, notwithstanding such dismissal or conversion, remain binding on all parties in interest and (z) this Court shall retain

US_ACTIVE:\43809457\06\71620.0069
#15026723 v1

16

jurisdiction for purposes of enforcing the Adequate Protection Liens and the Adequate Protection Claims.

    b.  If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated, or stayed, such reversal, modification, vacation, or stay shall not affect (i) the validity of any Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Agent and the Lenders of the effective date of such reversal, modification, vacation, or stay or (ii) the validity, priority or enforceability of the Adequate Protection Liens, the Adequate Protection Superpriority Claims, or this Interim Order with respect to any Adequate Protection Obligations. Notwithstanding any such reversal, modification, vacation, or stay, any use of the Cash Collateral by the Debtors or any Adequate Protection Obligations incurred by the Debtors prior to the actual receipt by the Agent and the Lenders of written notice of the effective date of such reversal, modification, vacation, or stay shall be governed in all respects by the original provisions of this Interim Order, and the Agent and the Lenders shall be entitled to all the rights, remedies, privileges and benefits granted in this Interim Order with respect to all uses of Cash Collateral and the Adequate Protection Obligations.

    c.  The Adequate Protection Liens, the Adequate Protection Superpriority Claims, the Adequate Protection Obligations, and all other rights and remedies of the Agent and the Lenders granted by this Interim Order shall survive, and shall not be modified, impaired, or discharged by entry of an order converting any of the Cases to cases under chapter 7 or dismissing any of the Cases, or by any other act or omission. The terms and provisions of this Interim Order shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the Adequate Protection Liens, the Adequate Protection Superpriority Claims, the Adequate Protection

Obligations, and all other rights and remedies of the Agent and the Lenders granted by this Interim Order shall continue in full force and effect until the Adequate Protection Obligations are indefeasibly paid in full.

    d. Except as expressly provided herein, entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (i) any of the rights of any of the Agent or the Lenders under the Bankruptcy Code or under any nonbankruptcy law, including, without limitation, the right of any of the Agent and the Lenders to (x) request modification of the automatic stay of section 362 of the Bankruptcy Code, (y) request dismissal of any of the Cases or (ii) any other rights, claims or privileges (whether legal, equitable or otherwise) of the Agent and the Lenders.

  12. <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

  13. <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Interim Order according to its terms.

  14. <u>Final Hearing</u>.  The Final Hearing is scheduled for November 10, 2011 at 3:00 p.m. (prevailing eastern time) before this Court.  The Debtors shall promptly serve a notice of entry of this Order and of the Final Hearing, together with a copy of this Interim Order, by first class mail, postage prepaid, upon: (a) the parties listed on Docket Nos. 47 and 52; (b) the Debtors' thirty largest unsecured creditors; (c) all other parties with liens of record on assets of the Debtors as of the Relief Date; (d) all financial institutions at which the Debtors maintain deposit accounts; and (e) all other parties requesting notice pursuant to Bankruptcy Rule 2002.  The notice of the entry of this Interim Order and the Final Hearing shall state that objections to the relief requested in

the Motion and with respect to any proposed Final Order shall be filed with the United States Bankruptcy Court for the District of Delaware by no later than 5:00 p.m. (prevailing eastern time) on November 1, 2011 (the "**Objection Deadline**"), which objections shall be served so that the same are actually received before the Objection Deadline by (a) the attorneys for the Debtors, Pepper Hamilton LLP, 3000 Two Logan Square, Eighteenth and Arch Streets, Philadelphia, Pennsylvania 19103 (Attn: Leon R. Barson, Esq.) and Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 Market Street, P.O. Box 1709, Wilmington, Delaware 19899 (Attn: David Fournier, Esq. and James C. Carignan, Esq.); (b) the attorneys for any official committees; (c) the Office of the U.S. Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Juliet Sarkessian, Esq.; and (d) the attorneys for the Lenders, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Stephen Karotkin, Esq.) and Richards, Layton and Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801 (Attn: Daniel J. DeFranceschi, Esq.).

15. Immediate Effect. The Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon its entry. The fourteen day stay provisions of Bankruptcy Rule 6004(h) are waived and shall not apply to this Order.

Dated: October 12, 2011

_____
THE HONORABLE KEVIN GROSS
CHIEF UNITED STATES BANKRUPTCY JUDGE

US_ACTIVE:\43809457\06\71620.0069
#15026723 v1

19